UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SPENCER HELLWIG,

                Plaintiff,

        -against-

COUNTY OF SARATOGA, SARATOGA
COUNTY BOARD OF SUPERVISORS, and
THEODORE T. KUSNIERZ, JR., *individually
and in his official capacity as* Chairman of the
Saratoga County Board of Supervisors,

                Defendants.
_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**
1:22-cv-488 (BKS/DJS)

      Plaintiff, SPENCER HELLWIG, by and through his attorneys, Capezza Hill, LLP, hereby alleges as his Complaint the following:

## PRELIMINARY STATEMENT

      1.    Plaintiff Spencer Hellwig, the former County Administrator for defendant Saratoga County, was unlawfully terminated in retaliation for standing up to and opposing discriminatory acts perpetrated against a female colleague, Margaret McNamara, by defendant Theodore Kusnierz, who, prior to engineering Mr. Hellwig's unlawful termination, stated his intention to "go after" Mr. Hellwig because he supported McNamara. Mr. Hellwig engaged in protected conduct when he participated in an investigation into McNamara's discrimination complaints against defendants and, as a consequence, was terminated in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§2000e-2 et seq. ("Title VII"); the New York State Executive Law §§290, et seq. ("Human Rights Law" or "HRL"); and 42 U.S.C. § 1983.

      2.    Mr. Hellwig seeks reinstatement, compensatory damages, punitive damages, back pay, interest, costs, and attorneys' fees.

1

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a), and 42 U.S.C. §2000e-5(f)(l) and (3).

4. Plaintiff's claims under the Human Rights Law for retaliation for engaging in protected activity, arise from the same set of facts and circumstances that are claimed under Title VII. Therefore, the jurisdiction of this Court, with respect to Plaintiff's Human Rights Law claims, is invoked pursuant to 28 U.S.C. §1367 (supplemental jurisdiction).

5. Plaintiff demands a jury trial in this action.

6. The venue for this action is set in the Northern District of New York based on the fact that the events relevant to this action took place in the County of Saratoga, State of New York; defendants County of Saratoga and its Board of Supervisors are located within the County of Saratoga; and the residence of the plaintiff and individual defendant are within the Northern District of New York.

**PARTIES**

7. Plaintiff Spencer Hellwig ("Plaintiff" or "Mr. Hellwig") is the former County Administrator for Saratoga County who resides in the City of Saratoga Springs, County of Saratoga, State of New York.

8. Mr. Hellwig was employed by the County of Saratoga from 1988 until his unlawful discharge, which became effective on or about January 10, 2021.

9. At all times relevant herein, defendant County of Saratoga (the "County") was a county duly organized and existing pursuant to the laws of the State of New York, and is bound by Title VII, the HRL, and 42 U.S.C. §1983.

10. At all times relevant herein, the County was the "employer" of Mr. Hellwig as

defined by Title VII and the Human Rights Law.

11. At all times relevant herein, defendant Saratoga County Board of Supervisors (the "Board") was the County's governing board, comprised of twenty-three (23) Supervisors representing nineteen (19) towns and two (2) cities within Saratoga County.

12. At all times relevant herein, the Board made determinations regarding the employment of Mr. Hellwig and other County employees, including but not limited to, decisions to hire, non-renew, and discharge employees.

13. Upon information and belief, defendant Theodore T. Kusnierz, Jr. ("Kusnierz") was elected the Supervisor for the Town of Moreau, County of Saratoga, effective January 1, 2018, and was elected as the Chairman of the Saratoga County Board of Supervisors on January 6, 2021.

14. Upon information and belief, Kusnierz is a resident of the Town of Moreau, County of Saratoga, State of New York.

15. At all times relevant herein, Kusnierz unlawfully aided and abetted the illegal acts of the County and Board and is therefore individually liable for his conduct and rightfully named as a defendant herein pursuant to the Human Rights Law and Section 1983.

16. At all relevant times, Kusnierz was acting under color of state law.

## PROCEDURAL HISTORY

17. Mr. Hellwig filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 1, 2021, alleging Defendant County of Saratoga retaliated against him for having participated in an internal investigation against a member of the County Board of Supervisors.

18. On February 11, 2022, the EEOC dismissed Mr. Hellwig's Charge of Discrimination and issued a right to sue letter. A true and accurate copy of the EEOC Dismissal

and Notice of Rights (Right to Sue letter), dated February 11, 2022, is annexed hereto as **Exhibit "A."**

**FACTUAL ALLEGATIONS**

**I. Plaintiff's Employment with the County**

19. Plaintiff began his employment in 1988 when he was hired by the Saratoga County Employment and Training Administration.

20. On December 21, 2010, Mr. Hellwig was appointed County Administrator.

21. Mr. Hellwig worked in that role until or about January 2021, when he was wrongfully and unlawfully terminated.

22. As the County Administrator, Mr. Hellwig was responsible for supervising appointed department heads, serving as budget officer, providing staff support to the Board of Supervisors, and administering the County's execution of policies established by the Board.

23. As the County Administrator, Mr. Hellwig's performance was exemplary, and he consistently received positive performance reviews.

24. For the majority of his time working for the County, Mr. Hellwig reported to the Chairman of the County Board.

**II. The Discrimination Complaint Against Kusnierz**

25. On or about April 28, 2020, while Mr. Hellwig was employed by the County, the Saratoga County Director of Human Resources, Margaret McNamara, filed an internal complaint of Alleged Discrimination with the County, alleging gender discrimination and a hostile work environment against Defendant Theodore Kusnierz.

26. The internal complaint alleged in substance that:

    a. Kusnierz displayed a hostile attitude towards McNamara, including by

referring to her as "madame" in derogatory tones and threatening her job.

b. Kusnierz made negative comments about McNamara's work.

c. Kusnierz improperly criticized McNamara for receiving additional compensation during the onset of the COVID-19 pandemic, when she was not actually receiving any additional compensation.

d. Kusnierz spoke negatively of McNamara in public and private settings.

e. Kusnierz threatened to make performance complaints against McNamara.

f. Kusnierz threatened that McNamara should apologize to Kusnierz.

g. Kusnierz took actions to intimidate and humiliate McNamara and threatened her job.

h. Kusnierz criticized McNamara in statements with newspapers.

### III. McNamara is Terminated

27. Following the internal complaint, the County retained the law firm of Bond, Schoeneck and King ("BSK") to conduct an internal investigation of McNamara's discrimination complaint against Kusnierz.

28. Additionally, a second investigation was conducted by the Board of Supervisors to review the findings of an external report authored by E. Stewart Jones Hacker Murphy, LLP, which investigated the circumstances surrounding the adoption and execution of special rates of compensation for physically present workers during the COVID-19 pandemic.

29. The Board appointed an External Report Review Committee to review the findings of the external investigation and to make recommendations as to what disciplinary actions, if any, may be appropriate against employees named in the report.

30. Although Kusnierz recused himself from the External Report Review Committee,

Kusnierz continued to participate in discussions regarding McNamara's allegations, using the opportunity as a pretext for punishing McNamara, influencing the outcome of his own potential discipline, and affecting the outcome of McNamara's internal complaint.

31. Thereafter, Kusnierz actively sought to replace McNamara by controlling a search committee process which, upon information and belief, violated Civil Service law with regards to posting a position that did not meet the minimum qualifications, resulting in a male candidate being chosen for McNamara's position.

32. On June 15, 2021, the County held a Board of Supervisors meeting, wherein Kusnierz caused Resolution No. 190 to be added to the agenda, an agenda item that was not included in the public meeting agenda posted on the County's website.

33. Such Resolution called for McNamara's term to expire and the search committee's hand-picked male candidate to be appointed.

34. The County refused to release the payment for McNamara's owed sick leave without a signed release of claims.

**IV. Mr. Hellwig Engaged in Protected Conduct**

35. McNamara reported to Mr. Hellwig during her time working for the County.

36. As County Administrator, Mr. Hellwig was the first point of contact for department heads, including McNamara.

37. Mr. Hellwig had numerous conversations with McNamara regarding Kusnierz's discriminatory treatment.

38. Mr. Hellwig observed the discriminatory treatment firsthand during various meetings.

39. For example, after a March 27, 2020 Board Meeting, Kusnierz told Mr. Hellwig, in

sum and substance, that McNamara had better apologize to Kusnierz, or he would not stop harassing her.

40. Mr. Hellwig immediately reported Kusnierz's statement to the Board Chairman at the time.

41. Mr. Hellwig also told McNamara about Kusnierz's comment.

42. Mr. Hellwig did not prevent McNamara from filing and pursuing her workplace harassment complaint.

43. In fact, Mr. Hellwig encouraged McNamara to file her complaint.

44. When Kusnierz received notice of McNamara's Complaint, Kusnierz hired private counsel.

45. Kusnierz wanted the County to pay for his personal legal representation.

46. In or about May 2020, Kusnierz contacted the County Attorney, who contacted Mr. Hellwig, seeking approval for the disbursement of County funds to pay for Kusnierz's personal legal fees.

47. Upon information and belief, Kusnierz viewed the request for authority to cover attorney's fees as a test of Mr. Hellwig's loyalty, and an indication of whether Mr. Hellwig was supporting McNamara.

48. Deeming the request inappropriate, Mr. Hellwig refused to authorize the payment of Kusnierz's personal legal fees.

49. Kusnierz became aware that Mr. Hellwig had rejected the request for legal fee payment.

50. Upon information and belief, Kusnierz viewed Mr. Hellwig's refusal to authorize the payment for legal fees as an act of solidarity in support of McNamara's internal complaint

against Kusnierz.

51. As part of the internal investigation by BSK, Kusnierz was interviewed on June 3, 2020.

52. Mr. Hellwig was also interviewed as a part of the investigation on June 15, 2020.

53. Mr. Hellwig provided information to the BSK attorney corroborating the discrimination complaint against Defendant Kusnierz.

54. Specifically, in his interview with the BSK lawyer, Mr. Hellwig said:

    a. Kusnierz displayed a hostile and aggressive tone toward McNamara.

    b. Kusnierz disrespectfully refused to listen to McNamara.

    c. There was no question in Mr. Hellwig's mind that Kusnierz was acting this way toward McNamara because she is a woman.

    d. Kusnierz did not provide McNamara an opportunity to explain her conduct or performance.

    e. Kusnierz showed disdain toward McNamara.

    f. Kusnierz "shook up" McNamara on a phone call.

    g. Kusnierz made McNamara feel threatened.

    h. McNamara was visibly frightened by Kusnierz.

    i. Kusnierz's conduct was intense and targeted toward McNamara.

    j. Kusnierz's conduct toward McNamara was aggressive.

    k. Kusnierz made McNamara feel embarrassed.

    l. Kusnierz treated McNamara differently than male colleagues.

    m. Kusnierz's behavior towards McNamara was retaliatory.

    n. Kusnierz's behavior was intended to intimidate and bully McNamara.

       o.    Kusnierz's behavior toward McNamara was dramatically different from his behavior toward men.

       p.    Kusnierz cornered Mr. Hellwig during meetings to confront him about his support for McNamara.

55. In participating in the BSK investigation, Mr. Hellwig engaged in a protected activity.

56. Defendant Kusnierz was provided a copy of BSK's investigative report.

57. Defendant Kusnierz knew that Mr. Hellwig supported McNamara during the BSK investigation, which was confirmed in a report issued by BSK and provided to Kusnierz.

58. Kusnierz was angry about Hellwig's continued support for McNamara.

59. Upon information and belief, Mr. Hellwig's support of McNamara extended beyond the BSK investigation. To wit, Mr. Hellwig came to McNamara's defense during Board meetings after her complaint was filed in March 2020 when Kusnierz attempted to single her out and publicly humiliate her.

60. Mr. Hellwig's intervention and support also angered Kusnierz, as Mr. Hellwig became an obstacle toward his attempts to publicly humiliate McNamara.

61. Upon information and belief, the County and Board also knew that Mr. Hellwig had supported McNamara in his interview, as he did publicly during Board meetings. Further, upon information and belief, the Board of Supervisors and the County later received a copy of the investigative report, which summarized Mr. Hellwig's interview.

62. Following the investigation, Kusnierz and his political allies on the Board (Schopf, etc.) made clear that they intended to retaliate against Mr. Hellwig, McNamara, and other County employees for participating in the BSK investigation.

63. There was a distinct shift in Kusnierz's and his political allies' tone after the investigation.

64. For example, Kusnierz and other Board members were rude during Committee/Board meetings, their conduct towards Mr. Hellwig became inappropriate and cold, and criticism of him in local newspapers began to increase.

**V. Termination of Plaintiff's Employment**

65. Following Mr. Hellwig's interview on June 15, 2020, Kusnierz's retaliatory animus came to a head when Kusnierz violated Board protocol and sought to remove Mr. Hellwig from office, ultimately resulting in his termination.

*The August 18, 2020, Board Meeting*

66. The first attempt to unlawfully terminate Mr. Hellwig was at the August 18, 2020, Board meeting at which Kusnierz asked for a motion to add a resolution to the day's agenda that called for: "rescinding the at will appointment of County Administrator Spencer Hellwig effective immediately . . . ."

67. In discussions at that meeting, another Board Member (Lawler) commented that Kusnierz's motion was inappropriate and that the Board should have an opportunity to consider. Lawler asked Kusnierz to state the reasons for proposing to terminate Mr. Hellwig, but Kusnierz refused to add further comment as to his reasoning behind proposing termination.

68. Lawler continued to question Kusnierz as to why he refused to state the reasons behind firing Mr. Hellwig: "You [Kusnierz] may have the votes, but shame on you. And the lawsuit that is sure to follow, you will have earned it. You will have earned it and the taxpayers of this County will end up paying."

69. At some point in August 2020, a few months after McNamara's discrimination

complaint was filed, and a few weeks after Mr. Hellwig provided testimony supporting McNamara's claims in the BSK investigation, Kusnierz told another Board Member that the administration (i.e. McNamara and Mr. Hellwig) were "after him" and Kusnierz said he would, in turn, be "going after them all."

70. At the same August 18, 2020, Board meeting, Board member Peck noted that there had been an unlawful workplace harassment case filed against one of the Board Members, that an outside investigation had been ongoing for months, and that it appeared clear to him that McNamara filed it against Kusnierz. Further, he asserted the purpose for "going after" all those involved in the investigation is to "squash or silence the pending report [be]cause those are the people that know about it."

71. Kusnierz later removed the resolution from consideration and offered instead that the resolution should "rescind the at will appointment of the County Administrator Spencer Hellwig effective immediately upon the outcome of an investigative inquiry."

72. Supervisor Schopf proposed a suspension of Mr. Hellwig pending an investigation into the alleged improper payment of time-and-a-half to County employees during the outset of COVID-19.

73. Schopf also proposed a 7-member committee to analyze the external COVID report.

74. Schopf included Kusnierz as a committee member, whose purpose was to find a basis to terminate Mr. Hellwig.

75. The investigation regarding COVID-19 time-and-a-half pay was a pretextual effort to terminate Mr. Hellwig in retaliation for supporting McNamara.

76. On January 6, 2021, Kusnierz, the subject of McNamara's complaint, was elected

Chairman of the Saratoga County Board of Supervisors.

77. That same day, at a Board Meeting, Kusnierz introduced and sponsored a Resolution proposing to terminate Mr. Hellwig as County Administrator. The Board passed Resolution 4-2021 which stated:

> WHEREAS, by reason of the January 10, 2021, cessation of employment of Spencer Hellwig, a vacancy will be created in the position of County Administrator; now, therefore, be it
>
> RESOLVED, that [identity redacted] be and […] hereby is appointed to the position of County Administrator as of January 11, 2021, at the base annual rate of $156,064.09; and be it further
>
> RESOLVED, that the Board of Supervisors wishes to express its gratitude for Mr. Hellwig's 33 years of dedicated service to the County and wishes him all good intentions with regard to his future endeavors.

78. Mr. Hellwig was retaliated against because he participated in the investigation of McNamara's claim against Kusnierz, who became the Supervisor/Chairman of Board of Supervisors.

79. Because of this retaliation and termination, Mr. Hellwig has suffered damages including the loss of back and front pay, lost pension benefits, and attorneys' fees and costs.

## AS AND FOR A FIRST CAUSE OF ACTION

**(Retaliation Under Title VII against Defendants Saratoga County and the Board of Supervisors)**

80. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "79" above, as if set forth in full herein.

81. Mr. Hellwig engaged in protected activity as defined under Title VII by opposing the unlawful conduct of another County employee, namely, by opposing Kusnierz's unlawful discrimination against Mr. Hellwig's colleague, McNamara, by supporting McNamara, and by

participating in an internal investigation against Kusnierz.

82. Defendants retaliated against Mr. Hellwig because of his protected activity by attempting to and ultimately successfully removing him from his position of 33 years.

83. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment and income, and has suffered and continues to suffer loss of other employment benefits, distress, humiliation, embarrassment, great expense, and damage to his reputation.

### AS AND FOR A SECOND CAUSE OF ACTION

**(Retaliation against Defendants Saratoga County and the Board of Supervisors under New York State Human Rights Law)**

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "83" above, as if set forth in full herein.

85. By their conduct described herein, defendants retaliated against Plaintiff for engaging in protected activity, in violation of the New York State Human Rights Law, New York Executive Law §§ 290, *et seq*.

86. Plaintiff was injured as a direct and proximate result of Defendants' retaliatory conduct.

87. By reason of the foregoing, Plaintiff is entitled to compensatory damages.

### AS AND FOR A THIRD CAUSE OF ACTION

**(42 U.S.C. § 1983, Retaliation against Defendant Kusnierz)**

88. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "87" above, as if set forth in full herein.

89. Plaintiff complained of discrimination of a female coworker.

90. Kusnierz, the subject of the Complaint, directly targeted Mr. Hellwig as a result.

91. Kusnierz willfully retaliated against Mr. Hellwig solely by virtue of his authority

as a County official.

92. Kusnierz knew, or should have known, that his actions violated a clearly established law under the Fourteenth Amendment's Equal Protection Clause.

93. As a result, Plaintiff suffered substantial financial loss and other damages.

94. Defendant is therefore liable to Plaintiff, in his individual capacity, for damages under § 1983.

95. Defendant Kusnierz is also liable to Plaintiff, in his official capacity, for prospective injunctive relief under 42 USC §1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

**(Aiding and Abetting Claim as Against Defendant Kusnierz Under NYSHRL)**

96. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "95" above, as if set forth in full herein.

97. As set forth above, Defendant Kusnierz directly participated in the conduct giving rise to Plaintiff's retaliation claim and aided and abetted the County Defendants in their unlawful termination of Mr. Hellwig.

98. Defendant Kusnierz intentionally and with discriminatory intent retaliated against Plaintiff because of his support of a colleague's sexual discrimination claims.

99. Kusnierz, as Chairman of the Board of Supervisors, had the authority and political power to terminate Mr. Hellwig through Board resolution.

100. As a consequence of Kusnierz's retaliatory and discriminatory actions, Mr. Hellwig suffered damages.

**WHEREFORE**, Plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

A. Adjudging and declaring that the conduct of Defendants violated Plaintiff's rights under Title VII; the New York Human Rights Law, New York Executive Law §§290, et seq. and §1983;

B. Adjudging and declaring that the defendants' termination of Plaintiff's employment constitutes retaliation for his protected activity that violates Title VII and NYSHRL;

C. Adjudging and declaring that Defendant Kusnierz is individually liable for his discriminatory, harassing, and retaliatory conduct against plaintiff under §1983 and NYSHRL;

D. Awarding Plaintiff reinstatement, back pay, benefits, and other emoluments of employment;

E. Awarding Plaintiff compensatory damages in an amount to be determined by the jury;

F. Awarding Plaintiff punitive damages in an amount to be determined by the jury;

G. Awarding Plaintiff the costs and disbursements of this action, including an award of attorneys' fees; and

H. Awarding such other, further, and different relief as this Court deems just.

Dated: May 11, 2022

**CAPEZZA HILL, LLP**

_____
Benjamin W. Hill, Esq.
Bar Roll No. 514953
Abby McCormick-Foley, Esq.
Bar Roll No. 703342
*Attorneys for Plaintiff*
30 South Pearl Street, P-110
Albany, NY 12207
518-478-6065
ben@capezzahill.com